UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BENITA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:23-CV-44-HAB |
| ) | |
| AMERICAN SENIOR COMMUNITIES, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, a Black woman, took part in a screaming match at her job with a white coworker. Despite that nothing overtly or even impliedly racial was said during the argument, Plaintiff believed that the incident was racially motivated. The incident was investigated and both women were disciplined. When Defendant American Senior Communities, LLC, ("ASC") refused to guarantee Plaintiff that she and the coworker would not work together again, Plaintiff quit.

From that fact pattern, Plaintiff sued. She alleges that she faced a racially hostile work environment that resulted in her constructive discharge. ASC has moved for summary judgment. (ECF No. 31). That motion is now fully briefed. (ECF Nos. 33, 40, 45). Because no reasonable jury could find for Plaintiff, the motion will be granted.

I.     **Factual Background**

ASC operates several nursing homes in and around Fort Wayne, Indiana. Plaintiff worked at four of those facilities from 2019 through 2021. Plaintiff's work history was spotty, with Plaintiff quitting at least twice only to be rehired.

The incident giving rise to this suit occurred in December 2021. Eva Stinson ("Stinson"), a white coworker of Plaintiff, approached the nurses' station where Plaintiff happened to be sitting.

Stinson told Melanie Clibon ("Clibon"), the nursing supervisor, that Stinson was going to "lose [her] shit." Stinson was exasperated about the treatment of a resident who was taken to the hospital earlier that morning—Stinson believed that the resident should have been transported to the hospital the day before.

Plaintiff, who was responsible for the resident's care the previous day, took exception. Plaintiff defended the care she had provided, noting that whether to send a resident to the hospital was up to a doctor and nurse practitioner, neither of whom had recommended transport. Stinson responded, "I don't believe you." Tempers flared from there, and a loud argument ensued within earshot of another resident and the resident's family. At no point during this argument did Stinson say anything related to Plaintiff's race.

Clibon eventually intervened, instructing both Stinson and Plaintiff to walk away. Stinson left and the argument ended. Clibon offered Plaintiff the option to leave work for the day, and Plaintiff accepted that option.

This argument was the first and only negative interaction between Plaintiff and Stinson. While both worked weekends, they rarely interacted as they were assigned to opposite ends of the facility. Plaintiff never heard Stinson say anything regarding Plaintiff's race—indeed, Plaintiff never heard any ASC employee make a racially harassing or discriminatory comment.

Following the argument, Clibon reported the incident to Kim Hughes ("Hughes"), ASC's Executive Director of that facility. Plaintiff also reported the incident via a written statement to Hughes and ASC's Director of Nursing, Lisa Terry ("Terry"). Plaintiff reported that Stinson had questioned Plaintiff's judgment and integrity, stating that Stinson would never have dealt with her "white peers" in that way. Plaintiff also reported that Stinson did not approach any of the white nurses that had cared for the hospitalized resident. Finally, Plaintiff complained that Stinson had

not been disciplined for leaving her post after the argument, reporting that white employees often faced lesser discipline.

ASC's management investigated the incident, asking employees to prepare written statements. Stinson, Clibon, and others submitted those statements. Hughes reviewed the statements, finding no support for Plaintiff's race-based complaints. But to be safe, Hughes forwarded Plaintiff's complaints to ASC's corporate Human Resources department. Plaintiff believed that escalating her complaints to corporate HR was appropriate.

ASC assigned Ebony Lewis ("Lewis"), also a Black woman, to investigate Plaintiff's complaints. Lewis met with Johnson and Stinson, ultimately concluding that Plaintiff's complaints were meritless. Lewis reported her findings to Hughes, specifically noting that Plaintiff had identified no examples of racial disparity in treatment or discipline.

Hughes concluded that both Plaintiff and Stinson had acted unprofessionally during the argument. Stinson was given a written warning, Plaintiff a verbal warning. The verbal warning had no tangible effect on Plaintiff's job.

When Hughes and Lewis met with Plaintiff to report the findings of the investigation, Plaintiff demanded that Stinson be fired. When Lewis made it clear that would not happen, Plaintiff demanded a guarantee that she would not have to work with Stinson again. Hughes and Lewis said they would see what they could do as far as keeping the two women separate, but they could make no guarantees. Hearing that, Plaintiff left the meeting and quit.

One day later, Plaintiff called ASC's compliance hotline to complain about the incident with Stinson. She alleged that Stinson "bullied" and "harassed" African-American nurses. She also complained that Black employees received harsher discipline than white employees, specifically

3

referencing a Black employee named Stephanie who was fired for making unflattering comments about ASC. The parties dispute whether this firing occurred.

## II. Legal Analysis

Plaintiff has alleged four causes of action under Title VII and 42 U.S.C. § 1981: hostile work environment, constructive discharge, discrimination, and retaliation. The Court finds no merit to any of those claims.

### A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid

"the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Plaintiff Cannot Establish a Hostile Work Environment***

To state a claim for discrimination based on a hostile work environment, Plaintiff must show that (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). The conduct alleged must be "sufficiently severe or pervasive to alter the conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). Whether conduct meets this bar depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.*; *see also Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017).

The Court could go on at length detailing the ways that Plaintiff's hostile work environment claim fails, but it is sufficient to say that there is no evidence that the harassment Plaintiff identifies was based on her race. The only specific incident detailed in the evidence is the December 2021 argument. And Plaintiff believes it was race-based—her filings are full of invectives and hyperbole, going so far as to call Stinson a "crazed white woman." (ECF No. 41-1 at 2). But the evidence shows that Stinson said nothing related to race, either during this incident or at any other time. Indeed, the only person who has injected race into the conversation is Plaintiff. At this stage, Plaintiff's unfounded beliefs cannot carry the day. *Simpson v. Beaver Dam Comm. Hosps., Inc.*,

5

780 F.3d 784, 791 (7th Cir. 2015) (at summary judgment, evidence "must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation").

Stinson may have acted inappropriately during the December 2021 argument. And Plaintiff may have viewed her working conditions as unbearable in the aftermath. But without evidence that Stinson's conduct was based on Plaintiff's race, there is no legal claim. That's where the parties find themselves, and summary judgment is appropriate on the hostile work environment claim.

C.  *Plaintiff Cannot Establish Constructive Discharge*

Understanding that she quit her position, Plaintiff next asserts that she was constructively discharged by ASC. Ordinarily, of course, employers can expect their employees to remain on the job and seek redress from workplace misconduct. *See Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). A constructive discharge occurs in the extraordinary case when an employee suffers "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

This is a high hurdle for Plaintiff to clear. She must first show "working conditions even more egregious than that required for a hostile work environment claim." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). This hurdle can be crossed, though, where the evidence shows "a repeated pattern of offensive conduct by her supervisor, retaliatory actions after she complained to human resources, and her employer's general failure to respond despite repeated complaints." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007).

Egregious working conditions alone are not enough to prevail on a constructive discharge claim, however. The law requires the employee to go further by showing that seeking redress from the employer would be futile. *See id*. An employee who, though not in immediate danger, quits without notifying the employer of the egregious harassment has acted unreasonably and has not

6

been constructively discharged. *See Porter v. Erie Foods Int'l, Inc*., 576 F.3d 629, 639–40 (7th Cir. 2009). Similarly, no constructive discharge occurs if the employer responds diligently, and the employee quits despite a reasonable prospect that further complaints could lead to a resolution. *See id*. But if the employer "had numerous opportunities to respond to the situation" and failed to do so, with the "alleged complaints [falling] on deaf ears," a jury may find that the employee had no means other than quitting to prevent the harassment and thus was constructively discharged. *Boumehdi*, 489 F.3d at 790.

The constructive discharge claim fails for the same reason her hostile work environment claim fails. "[A]n employee can be constructively discharged only if the underlying working conditions were themselves unlawful (i.e., discriminatory in some fashion)." *Sweeney v. West*, 149 F.3d 550, 557-58 (7th Cir. 1998). As discussed above, the underlying working condition here, the December 2021 argument, was not unlawful. There is no evidence that Stinson was motivated, in whole or in part, by Plaintiff's race during that interaction. So even if Plaintiff subjectively believed that the working conditions were intolerable, they were not actionable. Summary judgment is appropriate.

**D.**   ***Plaintiff Cannot Establish an Adverse Employment Action, Defeating her Discrimination and Retaliation Claims***

The findings in the previous sections make the determination on Plaintiff's remaining discrimination and retaliation claims straightforward. Both claims have, as an element, an adverse employment action. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007); *Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022). Without constructive discharge, an employee who quits has not suffered an adverse employment action. *Norwood v. E. Allen Cmty. Schs.*, 825 Fed. App'x. 383, 388 (7th Cir. 2020). Because the Court has already found that no constructive discharge occurred, Plaintiff's unemployment is not actionable.

7

### III. Conclusion

For these reasons, ASC's motion for summary judgment (ECF No. 31) is GRANTED. The Clerk is DIRECTED to enter judgment for ASC and against Defendant.

SO ORDERED on July 12, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
